## (April 19, 1983)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAWN BRYANT, Appellant. — Judgment of the Supreme Court, New York County (Leff, J.), rendered May 1, 1980, convicting defendant after trial by jury of murder in the second degree; attempted robbery in the first and second degrees and conspir-

acy in the fourth degree and sentencing her to concurrent indeterminate terms of 20 years to life (murder); zero to five years (both robbery convictions) and zero to four years (conspiracy), is modified, as a matter of discretion in the interest of justice, to the extent of reducing the sentence on the murder conviction to 15 years to life, and is otherwise affirmed. At the time of the offense, defendant was only 18 years of age and had no prior criminal record. We believe the minimum sentence allowed by section 70.00 (subd 3, par [a], cl [i]) of the Penal Law to be appropriate in these circumstances. Concur — Murphy, P. J., Asch and Alexander, JJ.; Milonas, J., dissents in a memorandum and Ross, J., concurs in the dissenting memorandum of Milonas, J., and dissents in a separate memorandum, all as follows.

Milonas, J. (dissenting). Defendant appeals from a judgment of the Supreme Court, New York County, rendered May 1, 1980, which, following a jury trial, convicted her of murder in the second degree, attempted robbery in the first and second degrees and conspiracy in the fourth degree and sentenced her to concurrent indeterminate prison terms of from 20 years to life, zero to five years and zero to four years. This case arises out of a plan which the defendant devised with her sister, Deborah Braxton, and the latter's boyfriend, Charles Parker, to obtain a taxicab and rob a diner where Braxton was employed. In the early hours of September 28, 1979, after Braxton had gone to work, the defendant removed her sister's loaded gun and some additional ammunition from the top of the refrigerator. She and Parker, also carrying a loaded weapon, proceeded to the street where they hailed a cab. As the vehicle approached the diner, Parker pointed his gun at the driver's head and pulled the trigger. The car crashed, causing Parker and the defendant to flee. Parker thereupon returned to the apartment, while the defendant went to seek medical assistance. At trial, the People demonstrated that the defendant had incurred substantial debts during the period preceding the arrangement to rob the diner. Also introduced into evidence was a letter from the defendant to her sister, dated August 22, 1979, requesting that Braxton purchase a "prett[y] gun" and to "[g]et it as soon as possible", since it was "[v]ery important" that she do so. Thus, it is clear that the defendant's apparently urgent need for a gun was indicative of her intent to engage in a criminal transaction in order to procure money to meet her financial obligations. In this connection, she actively participated in the planning and execution of the attempted robbery which resulted in the murder of the taxicab's driver. She armed herself with a loaded gun and was involved in stopping the cab for the purpose of using it in furtherance of the contemplated robbery. Moreover, her conduct after the shooting manifests a complete disregard of the condition of the driver, who might conceivably have still been alive when the defendant and Parker made their hasty retreat and evinces, instead, merely an interest in protecting herself from apprehension. To that end, she even provided the police with a concocted story about being the victim of a Hispanic male. Although the majority believe that the defendant's youth (18 years of age at the time of the crime) and her lack of a prior criminal record warrant leniency, there are absolutely no mitigating factors here such as would render the sentence imposed by the court an abuse of discretion. Absent such an abuse, the sentence should be affirmed (*People v Junco,* 43 AD2d 266, affd 35 NY2d 419, cert den 421 US 951). The defendant's attempts to depict herself as a passive individual easily influenced by others and to disassociate herself from what occurred in the taxicab are entirely belied by the facts. She was not simply an innocent bystander, but an armed accomplice fully committed to the criminal enterprise upon which she deliberately and knowingly embarked. In my opinion, there is no justification for a reduction of her sentence.

Ross, J. (concurring in Justice Milonas' dissent and dissenting in a separate memorandum). I concur with the dissent by Milonas, J. The majority, in reducing the sentence to the minimum permissible by law, without any legal reasoning, other than the defendant's age and her lack of a prior conviction, are in effect urging that all young defendants, without prior convictions, be sentenced to the minimum allowable sentence, regardless of the nature and no matter how heinous the act. I cannot condone such an approach. If anything, it is an encroachment on the Legislature's prerogatives. Sentencing is a matter of discretion and should not be disturbed on appeal unless there is a clear abuse of discretion (*People v Junco,* 43 AD2d 266, affd 35 NY2d 419, cert den 421 US 951). Unlike the majority, the trial court saw the defendant, heard her testify and observed her demeanor. He concluded that she was not "a helpless waif". Before leaving her apartment with the accomplice to rob the diner, she armed herself with a .22 calibre revolver and took extra ammunition. The presentencing report notes that defendant's past history: "indicates that she has been for many years an angry, hostile young woman given to much acting out behavior [with] * * * a low threshold of frustration. Impulsive and volatile she attempts to manipulate situations to her own advantage and in the instant offense demonstrated a capacity for violence and a total disregard for the rights of other human beings." The murder of the 44-year-old victim was the inevitable result of defendant's intentional conduct. The victim's wife has lost her will to live; while his daughter, not much older than defendant, has had to drop out of college and her life has become a shambles. In their haste to be sympathetic toward the defendant, the majority ignores the victims (for surely the family of the murdered man are also victims) and overlooks the fact that, even at sentencing, the defendant did not express sorrow about the tragedy she had caused. What this court said in *People v Mendez* (75 AD2d 400, 406), is equally applicable herein: "Most importantly * * * this defendant * * * does not have any feelings of guilt * * * [Her] complete lack of any sense of remorse or guilt clearly indicates that the sentence imposed was not only appropriate, but in no manner could it be considered an abuse of discretion * * * Any lesser sentence imposed * * * would be a corruption of justice."